Wilson, J.,
delivered the opinion of the court.
This suit was instituted to recover as for money had and received, 150.00 paid by plaintiff under protest as a license fee exacted by ordinance of the defendant city for carrying on the business of a meat market or butcher shop. The ordinance in question was entitled, “ Concerning Health.” The sections which are material to the determination of this action read as follows:
“ Sec. 54. It shall be unlawful for any person or persons, firm or corporation, to keep open or establish, maintain or conduct within the limits of the City of Denver, any butcher shop or meat market without first having obtained a license therefor, as herein provided:
“ Any person or persons desirous of procuring a license ■shall make application to the fire and police board for the same, and such application shall have indorsed thereon the *525 approval of the health commissioner before it shall be considered by the said fire and police board; and there shall have been deposited with the city treasurer the sum of fifty dollars, which is hereby fixed as the annual fee of such license, to be evidenced by the receipt of the city treasurer, indorsed on said application. If the fire and police board refuses to order the issuance of such license to the party or parties applying for the same, the money so deposited with the city treasurer shall be returned to the applicantwithout any further action. Such license shall only be good at the place of business stated in the original application, and shall not be transferable from one person to another or from one location to another location.
“ Such licenses shall be revoked by the fire and police board, on the recommendation of the health commissioner; provided, that the premises are not kept in cleanly condition, and the meats, fish, game and fowl kept, offered for sale or sold are not of proper quality and kind for human consumption, and that all ordinances of the city, and rules and orders of the health commissioner in reference to the sale and storage of meats and food are not faithfully and satisfactorily complied with.” '
“ Sec. 158. That any person who violates, disobeys, omits, neglects or refuses to comply with or resists any of the provisions of this ordinance, *.* * shall, upon conviction, be fined a sum not less than three dollars, nor more than one hundred dollars, and every omission, neglect or continuance of the thing commanded or prohibited by this ordinance, for twenty-four hours, shall constitute a separate and distinct offense, and shall be fined accordingly.”
Judgment was in favor of the city, and plaintiff brings it to this court on error for review. The judgment is attacked on various grounds, but in the view which we take of the case, it is necessary for us to consider only that which assails the legality and validity of the ordinance. The power which the city had, if at all, to enact the ordinance and to require the payment of the license fee prescribed was derived through *526 one or the other, or both, of the following provisions of the city charter then in force:
“ Art. 2, sec. 20. (The City Council shall have power by ordinance.) Tenth. Exclusively to provide for the licensing, regulating and taxing of all lawful occupations, business places, trades, professions, amusements, places of amusement, the carrying of passengers, goods or merchandise and the use of horses or other animals and vehicles of all kinds, provided that such licenses shall be granted by the fire and police board only.”
“ Mfty-third. To regulate and license or prohibit butchers and to revoke their licenses for malconduct in the course of trade, and to regulate, license and restrain the sale of fresh meats, fish and vegetables.”
Much space is devoted in the briefs of counsel to the discussion of the question as to which of these provisions controlled, and formed the basis of the power attempted to be exercised by the enactment of the ordinance in question. Under our views of the case, this is also immaterial. From whichever provision it may be claimed that the power was derived, it is manifest that the legislature intended that the power granted, if derived from the last recited clause of the charter, should be exercised by the city council, or by the fire and police board acting under general regulations prescribed by the council if the power is given by the other clause, and not that one or more individuals should be authorized to grant or refuse a license at his or their mere whim or caprice, unrestrained and unrestricted by any rules or provisions in reference to the execution of the authority. The business or occupation of plaintiff is conceded to have been a lawful one, and he was entitled, therefore, to the privilege of carrying it on, subject only to such restrictions as the city had the authority to impose, and such as were imposed upon all others engaged in the same occupation. This ordinance upon its face violates this requirement. It seems intended to confer and did confer, upon the fire and police board and upon the health commissioner, not a discretion to be exercised upon *527 a consideration of the circumstances of each case as applied to general regulations and requirements in reference to all engaged in the same business, but a naked, arbitrary power to grant or withhold licenses without assigning any reason whatever therefor. It was a discretion which was purely arbitrary, and acknowledged neither guidance nor restraint. Under its provisions, if an applicant for license, as was said by the supreme court of the United States in Yick Wo v. Hopkins, 118 U. S. 366, in construing a city ordinance where a similar question was involved, “ being in every way a competent, qualified person, and having complied with every reasonable condition demanded by any public interest, should, failing to obtain the requisite consent of the supervisors to the prosecution of his business, apply for redress by the judicial process of mandamus to require the supervisors to consider and act upon his case, it would be a sufficient answer for them to say that the law had conferred upon them authority to withhold their assent, without reason and without responsibility.” This is not only in contravention of the general rule of law, that where power is conferred upon a municipal corporation to regulate any calling or business, they are powerless to delegate a discretionary authority to others, or to an individual, but is also violative of the constitution of the state and of the United States. The fourteenth amendment to the constitution of the United States provides that no state shall deny to any person within its jurisdiction the equal protection of the laws. This guarantee of equal protection of the laws has been held by the highest judicial authority in the country in Yick Wo v. Hopkins, supra, to be a pledge of the protection of equal laws. The guarantees of this amendment have been further defined and explained by the same high authority, in a leading case wherein it was said in reference to it, it was “ undoubtedly intended not only that there should be no arbitrary deprivation of life or liberty, or arbitrary spoliation of property, but that equal protection and security should be given to all under like circumstances in the enjoyment of *528 their personal and civil rights; that all persons should be equally entitled to pursue their happiness and acquire and enjoy property; that they should have like access to the courts of the country for the protection of their persons and property, or prevention and redress of wrongs, and the enforcement of contracts; that no impediment should be interposed to the same pursuits of any one, except as applied to the same pursuits of others under like circumstances; that no greater burdens should be laid upon one than are laid upon others in the same calling and condition.” Barbier v. Connolly, 113 U. S. 27. It needs no argument or discussion to show that the provisions of the ordinance in question violate this constitutional provision as construed and defined by the court whose judicial determination is supreme and final on all such questions. Under this ordinance, not only might an impediment have been interposed to the pursuit by plaintiff of his lawful occupation, which was not applied to those engaged in a similar business, but he might have been absolutely prohibited from carrying on his business whilst .others had been permitted to enjoy the privilege.
For these reasons we think that the ordinance in question was null and void. The precise question here involved has arisen and been thoroughly discussed in a number of the states, and its determination has been uniformly in accord with the views of the supreme court of the United States in the cases above cited, and by which we must be controlled. Mayor, etc., of Baltimore v. Radocke, 49 Md. 226; East St. Louis v. Wehrung, 50 Ill. 29; State ex rel. Garrabad v. Doring, 84 Wis. 585; City of Jacksonville v. Ledwith, 26 Fla. 163; McGregor v. Village of Lovington, 48 Ill. App. 211.
The plaintiff having paid under protest the license fee required and exacted by the void ordinance, is entitled to recover. Such payment was involuntary. Arapahoe County v. Cutter, 3 Colo. 349; Catoir v. Watterson, 38 Ohio St. 319; Bruner v. Clay City, 38 S. W. Rep. (Ky.) 1062; Neumann v. City of La Crosse, 94 Wis. 103.
Reporter’s Note. The opinion in the foregoing ease published in 10 Colo. App. page 407, was published by mistake while the ease was pending on rehearing. The former opinion was withdrawn and the foregoing is the final opinion of the court.
The judgment will he reversed and the cause remanded for further proceedings in conformity to this opinion.

Reversed.